# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | : | |
| SHAWN MILNER, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 3:16-cv-1857  (SRU) |
| | : | |
| WILLIAM MULLIGAN, et al., | : | |
|     Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

Shawn Milner, currently incarcerated at Northern Correctional Institution in Somers, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983.  Milner alleges that the defendants used excessive force and retaliated against him.  He also includes claims for violation of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d *et seq.* Milner names as defendants Warden William Mulligan, Jason Cahill, Brian Bujnicki, Michael McCormick, Correctional Officer Titus, Correctional Officer Laprey and Nurse Barbra Savoie. The complaint is dated November 14, 2016, the same day it was received by the court.  Milner's motion to proceed *in forma pauperis* was granted on November 15, 2016.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  Although detailed allegations are not

required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.      Allegations

On May 28, 2016, Milner was housed in the infirmary at Northern Correctional Institution.  He stopped Laprey during a tour of the unit and told Laprey that he needed to see medical staff because he was experiencing dizziness and blurred vision, preliminary indications of a seizure.  Milner told Laprey that he has a seizure disorder and had not received his medication that morning.  Laprey made fun of Milner's condition.  Before walking away, Laprey said that he would tell medical staff that Milner was faking a seizure.

Savoie came to the door of Milner's room.  Milner told her about the preliminary seizure indicators.  Savoie advised Milner to lie down on his bunk.  She ignored Milner's objection that he could fall off the bunk if he experienced a seizure.  Milner lay down on the floor to ensure his safety.  Shortly thereafter, he lost consciousness.  Savoie and Bujnicki entered the cell to assess Milner.  Savoie disclosed confidential medical information to Bujnicki during and prior to the

2

incident.

Bujnicki observed Milner lying face down.  He was unable to determine whether Milner was "playing possum."  Compl. at  ¶ 21 (doc. # 1-1).  Rather than permitting medical staff to attend Milner, Bujnicki deployed a chemical agent in the cell.  When Milner was unresponsive, Bujnicki directed Laprey to get a handheld camera to record the incident and Titus to get a convex shield.  Once the shield was placed over Milner's head and body, Bujnicki directed Savoie to perform a medical assessment.  No vital signs were taken and seizure protocols were not followed.  Milner was decontaminated and transferred from medical cell 1 to medical cell 2 and placed on the floor with a mattress.

Milner overheard McCormick speaking outside the cell.  McCormick stated that he was assisting Bujnicki and heard Bujnicki order Milner to "cuff up."  Compl. at ¶ 25.  When Milner regained consciousness he was unable to open his eyes and his body felt like it was burning.  McCormick spoke to Milner to calm him down.  On July 12, 2016, Mulligan noted in his incident report that staff had taken a cautious approach in dealing with Milner because of an alleged escape attempt.  On July 17, 2016, Cahill reviewed the incident report and determined that staff had acted appropriately.

Following the incident, Milner filed a grievance.  In the morning and evening of July 13, 2016, Bujnicki kicked and punched Milner's door and threatened him.  Milner alleges that this action was in retaliation for his filing the grievance.  Through the filing of the complaint Bujnicki and others have threatened and harassed Milner, issued false disciplinary reports, tampered with his legal and social mail and religious artifacts, and assaulted him when convenient.

II.     <u>Analysis</u>

Milner includes five counts in his complaint.  In the first count, Milner alleges that
Savoie violated his First Amendment rights when she failed to comply with HIPAA protocols
and divulged confidential medical information and violated his Fourteenth Amendment rights as
a pretrial detainee when she failed to follow seizure protocols.  In the second count, Milner
alleges that Bujnicki used excessive force against him when he deployed a chemical agent when
Milner was unconscious and Titus used excessive force by forcing Milner's head and back into
the floor with the convex shield.  In the third count, Milner alleges that Mulligan, Cahill and
McCormick failed to discipline the defendants for their unprofessional conduct.  In the fourth
count, Milner alleges that Bujnicki retaliated against him for filing a grievance.  Finally, in the
fifth count, Milner alleges that Laprey intentionally delayed medical attention.  Milner seeks
injunctive relief in the form of discipline of all defendants and an order that they comply with
ADA guidelines as well as damages.

A.     <u>HIPAA and Right to Privacy Claims</u>

In his introduction, Milner states that he brings a claim for HIPAA violations.  To the
extent that Milner is attempting to assert a claim for violation of HIPAA, the claim must be
dismissed.  HIPAA does not provide a private right of action.  *See Mascetti v. Zozulin*, 2010 WL
1644572, at *4 (D. Conn. Apr. 20, 2010) (no private right of action under HIPAA as
enforcement of HIPAA is limited to the Secretary of Health and Human Services); *see also
Rosado v. Herard*, 2014 WL 1303513, at *4 (S.D.N.Y. Mar. 25, 2014) (no express or implied
private right of action under HIPAA); *Barnes v. Glennon*, 2006 WL 2811821, at *6 (N.D.N.Y.
Sept. 28, 2006) (same).  Accordingly, any claims for violation of HIPAA are dismissed.

4

In the recitation of his legal claims, Milner contends that Savoie violated his First Amendment rights by disclosing information protected by HIPAA.  Although the First Amendment does not confer any right to privacy, I construe Milner's complaint as attempting to raise a Fourteenth Amendment right to privacy claim on account of Savoie's disclosure of Milner's medical condition.  In other words, Milner asserts that his constitutional right to privacy was violated by the unauthorized disclosure of the fact that he suffers from seizures.[1]

The right to privacy that Milner asserts "can be characterized as a right to 'confidentiality[.]'"  *Doe v. City of N.Y.*, 15 F.3d 264, 267 (2d Cir. 1994).  The right to confidentiality extends to "information relating to the status of one's health."  *Id.*  "Whether an inmate is entitled to constitutional protection against disclosure of a particular medical condition is determined on a case-by-case basis."  *Myers v. Dolac*, 2013 WL 5175588, at *7 (W.D.N.Y. Sept. 12, 2013) (citing *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 66 (2d Cir. 2011)).

An inmate may assert a constitutional right to privacy over a medical condition that is "both serious in nature and the type that is excruciatingly private and intimate in nature such as those likely to provoke an intense desire to preserve one's medical confidentiality."  *Id.* (internal quotation marks and alterations omitted).  In the prison context, the medical condition at issue must be an "unusual" medical condition which, if disclosed unnecessarily, "would likely expose an inmate to ridicule, discrimination, or even potentially violence, particularly when the word of

---

[1] Although Milner does not elaborate on the specific medical condition that he wishes to remain confidential, I construe his complaint as asserting that he would not like to disclose the fact that he has epilepsy.

the condition is likely to spread through humor or gossip." *Id.* (internal quotation marks and alterations omitted).

Courts within this Circuit have afforded constitutional privacy protection to the conditions of "HIV, transsexualism, and sickle cell anemia," as well as Hepatitis C. *Id.* at *7-8. Courts have denied protection to other medical conditions, including fibromyalgia, arthritis and sleep apnea. *See id.* at *7 (collecting cases).

Even if an inmate has a right to privacy regarding a particular medical condition, disclosure of that condition does not violate the Constitution if the disclosure is "reasonably related to legitimate penological interests." *Alsaifullah v. Furco*, 2013 WL 3972514, at *8 (S.D.N.Y. Aug. 2, 2013). Such is true even if the disclosure is made to other inmates and non-medical staff. *Id.*

Milner alleges that, after attending to his complaints about suffering from a seizure, Savoie disclosed HIPAA-protected medical information. Presumably Milner complains about the disclosure of his epileptic condition. Without addressing whether epilepsy is a medical condition that warrants constitutional protection, I conclude that Milner fails to adequately assert a right to privacy claim because he fails to assert facts indicating that the disclosure was made in a manner unrelated to legitimate penological interests. Based on facts asserted by Milner, it appears that Savoie disclosed information to other prison officials who were responsible for Milner's safety. If that were the extent of the disclosure, Milner's constitutional rights were not violated. There is no reason to believe that Savoie made any disclosures beyond those necessary to ensure Milner's future safety. If Milner is able to allege improper disclosure by Savoie, he can refile this claim. Accordingly, Milner's right to privacy claims against Savioe are dismissed

6

without prejudice.

      B.    <u>ADA Claim</u>

Milner also contends that the defendants violated his rights under the ADA and seeks injunctive relief to compel compliance with ADA requirements.

The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefit of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The statute is intended "to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

Milner has not identified any program or service that is routinely provided to able-bodied inmates but denied to him. The ADA does not apply to claims regarding the quality of medical or mental health services provided by correctional departments or provide a remedy for medical malpractice. *See Maccharulo v. New York State Dep't of Correctional Servs*., 2010 WL 2899751, at *2 (S.D.N.Y. July 21, 2010) (citation omitted). Absent such allegations, there is no factual basis for an ADA claim based on Milner's dissatisfaction with the medical services provided. The ADA claim and the request for injunctive relief regarding ADA compliance are dismissed.

      C.    <u>Request for Discipline</u>

As part of his claim for injunctive relief, Milner seeks an order that the defendants be disciplined or reprimanded for their actions. An alleged victim of a crime has no right to have

the alleged perpetrator investigated or criminally prosecuted.  *See S. v. D.*, 410 U.S. 614, 619

(1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another"); *Joyce v. Hanney*, 2009 WL 563633, at *9 (D. Conn. Mar. 4, 2009)

(prisoner had no constitutional right to have defendants disciplined or prosecuted).  Absent any

right to have the defendants disciplined, Milner's request for injunctive relief must be dismissed.

IV.    Conclusion

       Any claims for violation of the ADA and HIPAA, the right to privacy claim against

Savoie, and the requests for injunctive relief are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

To the extent that Savoie wishes to amend his complaint to add factual detail regarding his

Fourteenth Amendment right to privacy claim, he may do so within **thirty (30) days** of this

Order.  The case will proceed on the claims for use of excessive force against Bujnicki and Titus,

deliberate indifference to serious medical needs against Laprey, retaliation against Bujnicki, and

supervisory liability against Mulligan, Cahill and McCormick.

       It is hereby ordered that:

       (1)    **The Clerk shall** verify the current work addresses for each defendant with the

Department of Correction Office of Legal Affairs, mail a waiver of service of process request

packet containing the Complaint to each defendant at the confirmed address within **twenty-one**

**(21) days** of this Order, and report to the court on the status of the waiver request on the thirty-

fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall

make arrangements for in-person service by the U.S. Marshals Service on him or her in

individual capacity and the defendant shall be required to pay the costs of such service in

accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9)     The plaintiff shall utilize the Prisoner Efiling Program when filing any document with the Court.

**SO ORDERED** this 15th day of December 2016 at Bridgeport, Connecticut.

 /s/STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

10